Good morning, Your Honors. Jeff Gushel on behalf of Appellant Mr. Gonzalez-Aparicio. I'd like to reserve two minutes for rebuttal, please. If you'd keep an eye on the clock, we'd appreciate it. Okay. Thank you. The issue in this case, Your Honors, is that the defendant's ultimate sentence in this case was increased from roughly a guidelines maximum of 6 to 8 months to a guidelines maximum of 57 months on the basis of a 10-year-old conviction under Arizona law for sexual conduct with a minor because the trial court found that that was a crime of violence for sentencing purposes under the federal guidelines. To which there was no objection. To which there was no objection. But nevertheless, the trial court erred in making the finding that it was a crime of violence because under the Taylor categorical approach, the statutory rape conviction from Arizona did not qualify as a federal generic statutory rape offense. Because why? Something was missing? It was overbroad or what's the reason? Well, there were a couple of reasons. Number one, there was a missing element. Appellant would argue that the federal generic statutory rape offense includes an element of an age difference between the alleged perpetrator and the alleged victim. This is consistent not only with the federal statutory definition of that particular crime, but it's also consistent with the model penal code. And while I don't know the number of states in the union that require that additional element, I would suggest that it's probably a significant number of states. Can that be supplied through a modified inquiry? You could not apply a modified categorical. We know the defendant here was more than four years older, right? Well, what you have in the record of this case is the comments of defense counsel giving the defendants age. And this court in Rodriguez-Guzman, which has been cited throughout the briefs, basically rejected the notion that a sentencing court can rely on the comments of counsel at the time of sentencing or on the pre-sentence report in order to make findings that would essentially shoehorn the predicate offense into the federal generic offense. So the court impermissibly relied on that information if that's what the court did, and it appears that was part of the court's analysis. In your opening brief, though, you contemplated the application of plain error standard of review in your opening brief to us. Why shouldn't we hold you to that since at sentencing there was never any objection made? Everyone took it as a given that this was a crime, that the sentencing was correct. No one ever objected. And it went down as just an ordinary, everyday matter. And your opening brief itself contemplated whether that this is a plain error case. And don't you have to explain to us why we are outside, why you're entitled to relief, even though we're on a plain error standard here? If I recall correctly, I didn't contemplate plain error in the sense that I was suggesting to the court that that would be ultimately the court's determination as to what the standard of review would be. Well, there are exceptions, right? Pardon me? There are exceptions to the plain error rule. Well, yes. I mean, the first answer is, is that the primary problem in the trial court level was that the court misinterpreted the law, misinterpreted the guideline. Definitely in a state of at least, let's put it this way, it was not clearly error what occurred. Well, I think it was clear. But I think the real issue is that the trial court misinterpreted the law, and this court should conduct a de novo review. Let me be sure. It's a question of law. It is a question of law. To get the 16-level bump, the judge would have to find that either there was a crime of violence, right? That's what he has to find. Correct. And they define crime of violence as sexual abuse of a minor, statutory rape, and there are a few other things. Let's take sexual abuse of a minor out of it. We're dealing with statutory rape. This guy apparently was convicted of 13-1405 having sexual relations with a minor under the age of 15. That's what the pre-sentence report says. No. That's what it says. Well, there's a distinction, because when you look at the other cases, including Rodriguez-Guzman, and I forget the other cases, the inquiry is, what is the statute that he's convicted under? 1405 makes it a Class II felony to have sexual relations with a minor under the age of 15. Well, appellant's argument would be that the statute, the violation of criminal law in 1405 is defined at 1405, subsection A, which makes it a crime to have sexual relations with an individual under the age of 18 years. Fair enough. But under B, under B, it becomes a Class II felony if it's under 15, and that's what, according to the pre-sentence report, and to which he did not object, that's what he was, in fact, charged with. Well, right. But the pre-sentence report did not specify that he was – that he pleaded guilty or was convicted under 1405B. The pre-sentence report said he was convicted under 1405. Then you go on to – Okay. But then you have the problem that he didn't object to the inference that was drawn from that. He did not object, but I don't think it's a problem because I think the trial court misinterpreted the law, number one. And number two, even if this Court were to – there's a couple of issues there, but even if this Court were to decide you could apply a modified categorical approach, I don't think the Court is entitled to rely on hearsay statements coming from the pre-sentence report. Well, is that the main element you're – It's not the main element. That's not the main element. That's not the main issue. But if you're asking about that issue, I don't – Well, didn't your previous counsel actually take the crime of violence characterization as a given and relied upon the purported facts of the prior conviction to ask for a more lenient sentence? Actually, we'd be whipsawing the prosecution and the district judge if we accepted your position when that was what was sold to the Court in the first place. Well, I think the policy considerations here is that the seminal cases in this area, such as Taylor, really were setting forth some standards in order to protect a defendant against being harshly punished where there is an inadequate record of these underlying sentencing enhancements. But the prior counsel actually accepted this crime of violence and actually used it for the defendant's own benefit at the time of sentencing. Well, I don't think he used it for the defendant's benefit, but it's true he did not object. And he relied upon the facts of it being a crime of violence and asked for a more convenient – a lenient sentence based on aspects that he argued to the Court. He did talk about mitigating factors, but I see that I'm out of time. Let me – can I just ask one question? Sure, you do. What do you think is the controlling case on this issue about whether this is a crime of violence? Well, I think – Just give us a citation to one case or the name of one case. Well, Rodriguez-Guzman covers many of the important issues raised by the parties, although it will not address all of those issues. And the citation there – That's fine. No, you don't – that's enough for me. Rodriguez-Guzman is important. That's fine. I just asked for one case. Okay. Thank you very much. All right. Thank you, Your Honor. Thank you. May it please the Court. I'm Bob Miskell from the U.S. Attorney's Office in Tucson on behalf of the United States in this matter. The pre-sentence report clearly indicated – Could you pick the mic up a little bit? Thank you. The pre-sentence report clearly indicated that the court documents from the Arizona conviction reflect that the dependent was convicted under the prong of the Arizona statute where the victim was less than 15 years old. There was no objection to that, and under this Court's case law, the district court was entitled to rely on that information. Because there was no objection. Because there was no objection, yes. Well, we're on a plain error standard. Let us say – let's assume that. Okay. But even given the plain error standard, is there something here that would surmount that standard here? No. Well, it was a law such that – you've got to acknowledge that Ninth Circuit law is not exactly crystal clear in this area. I would suggest to the Court that at the time of the sentencing, the Gomez case, the Gomez-Mendez case, it established what the elements of statutory rape for the purpose of the sentencing guideline violent crime enhancement were. Are we bound by it at the time of sentencing? I would say that's still the law today, actually, in this circuit. Because there is – Well, you're much more confident about the law of the circuit than I am. What does Gomez-Mendez hold? Gomez-Mendez holds that for the purpose of statutory rape in the immigration illegal reentry guideline, in determining whether something in front of – Well, it doesn't even apply here, then. This is not a reentry case, is it? Excuse me? You mean for the purpose of immigration or for criminal sentencing? Criminal sentencing. And I think what we need to make clear is we're actually dealing with two bodies of law, essentially, that have diverged at this point. We've got the aggravated felony statute, which only uses the phrase sexual abuse of a minor, and we've got the sentencing guidelines, which use sexual abuse of a minor, statutory rape, and forcible sex offenses, including offenses where the consent was invalid. So we've got to look at what this Court has – how this Court has interpreted the sentencing guideline definition of statutory rape. And we start with the Gomez case on that. But it never addressed the specific question as whether the generic definition of statutory rape includes an age difference. I would – it – I would say – I would read it as it says it does not discuss that. By holding the elements of the statutory rape are sexual intercourse with a minor under the age of consent, and it's specified by state law, you can – the Court could not add elements to that definition without doing an en banc opinion on that issue. Well, but hasn't – haven't we done exactly that? No, you – Our case law? No, because the – Our case law defines statutory rape, doesn't it, to include the four-year age difference? Your – the case law of this circuit, and that's the Estrada-Espinoza case, defines sexual abuse of a minor as meaning the Federal statute that's titled sexual abuse of a minor, which does require the four-year age differential. But Estrada-Espinoza did not discuss – did not even attempt to discuss what the definition of statutory rape in the guidelines were. It was discussing what sexual abuse means in the context of the aggravated felony statute. Let me get straight. Regardless of what the law is now or is not now, where – is it your position that we have to determine whether at the time of sentencing there was plain error, and your position is there was no plain error? I'm – I'm saying there's no plain error even as we stand here today. I don't think – I don't think there are – Before we – before we get to today. Right. Is it your position that we look at the law to determine whether there was plain error or not at the time of sentencing or as we sit here today? I think under the plain error standard in the – I think it's the Thurman case. You look at the law it was at the time of sentencing to see if it was unclear to the – to the district court. If, in fact, the – but that's – that's the extent of what you look at the – At the time of sentencing. Right. Why should – why shouldn't we apply an exception to the plain error rule because this essentially is a question of law? I – I would suggest that the – Well, you agree it is a question of law, right? Partly, but it's also if you heard from the defendant's argument. He is challenging what the defendant was actually convicted of, which is a question of fact, actually. So he's – he's arguing both factual questions and legal questions. So I think the plain error analysis is appropriate in this case. No, but there's nothing on – in the factual dispute that involves, you know, the 4-year age difference, for instance, if that's a crucial element. You're saying he admitted as a matter of fact that he was convicted of the species of 1405 that involves a minor under the age of 15. And we also know indisputably from court records what his age was at the time of the offense. Well, that's what I suggested, but he says, well, you can't depend on what – you know. Well, I'm not depending on his admission. We know what his date of birth is. We can calculate how old he is – how old he was when he committed the prior offense. So you're saying even under a modified approach, it's a no – it's a no-brainer. Right. Well, you can't apply a modified approach because it's a missing element in the Arizona statute, right? And that's a question of law. The Arizona statute – you are correct. The Arizona statute does not have the 4-year age differential. Well, the modified approach doesn't apply. There is some – Under our peculiar case law. Yes. I would – I – Does the age differential that Judge Tshishima is talking about, does that apply to statutory rape, or does that apply to sexual abuse of a minor? The – this Court has applied it only to sexual abuse of a minor at this point. Okay. That's – we'll take that off the table for a second. Okay. How about statutory rape? This Court has not applied the 4-year differential to statutory rape, as that phrase is used in the sentencing guidelines. Can we interpret Rodriguez-Guzman to say, at least when we're talking about statutory rape, not sexual abuse of a minor, statutory rape, the minor has to have been at least under 16? Yes. I think – I think Guzman directly holds that. Okay. So then if he basically admits to the judge that the pre-sentence report is correct, that the minor was under 15, we may or may not have sexual abuse of a minor, but we unquestionably have statutory rape. That is the government's position. Okay. Now, had he objected, what would have happened? Just so I understand how this would have played out. We're – you're operating on a plain error. Suppose he said, I object, this isn't, you know. I mean, I think the main difference was we would have developed the record more, hopefully, as to what he actually was convicted of in the – You would have then been put to your proof. You would have had to go get records from the Superior Court, whatever it is. Correct. Okay. And – Well, if they were available, the record suggests the record was available. I would suggest the record suggests the records were available because the pre-sentence report quotes from court documents. And the pre-sentence report says that. Well, this is the case with the – Paragraph 21. You weren't the prosecutor for sentencing, were you? That's correct. So I think whoever was there has to say something like, well, you know, I looked for so-and-so, but there are no records there. Remember that in part of the sentencing? Right. But again, the – So that indicates, you know, the U.S. Attorney's Office tried to get backup records and couldn't get any. But the probation office – again, if you take the probation – the pre-sentence report at face value, it says that it was relying on court documents to determine what the defendant was convicted of. Well, under Taylor, though, the PSR is not – this is up for dispute, too. But I think for the most part it's considered not to be a proper instrument for a modified approach. Assuming there is an objection. Except – Assuming an objection. Well, at least it can be – at least it can be dependent upon for its factual assertions, which are uncontested. Yeah, in the absence of objection. That is correct. And that's the situation we have here. All right. Unless the Court has any further questions. I don't think so. Thank you very much. We've got about a minute and a half, I think, left. Thank you. I'll try to make this quick. Thanks. I think the PSR at bar was ambiguous and unclear, which distinguishes it for that reason. Second, Rodriguez-Guzman was a statutory rape case and did contain considerable discussion as to how the Court should define the federal generic offense of statutory rape. And that case is very important because it says, look at federal statutory definition, look at the model penal code, and at a minimum, consult the vast majority of states to determine how they define it. The reason is because under Taylor, the purpose of the jurisprudence in this area is to create a generic federal definition of the crime that will be distinct and operate independent of what the various states are doing, because the Taylor Court anticipated the chaos that could ensue because every state in the country has an option of creating its own definition. So I think Rodriguez-Guzman is compelling authority with respect to that issue. Okay. Thank you. You're out of time, Mr. Miskell. Thank you. Thank you. Thank you, too, Mr. Miskell. Both counsel, the case just started. You just submitted it.
judges: Cowen, Tashima, Silverman